AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Blue Samsung Cell Phone
FP&F No. 2021565400001001 Item 003
("Target Device #2")

Case No. '20 MJ5141

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachments A-2, and incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, United States Code § 1324 | Transportation Of Illegal Aliens (a)(1)(A)(ii) Aiding And Abetting (V)(II) |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Wesley Cornue, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Wesley Cornue, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___telephone___ *(specify reliable electronic means)*.

Date: 11/27/2020

*Judge's signature*

City and state: San Diego, California    HON. BARBARA L. MAJOR, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Wesley Cornue, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant to search the following electronic devices (collectively the "Target Devices"):

> Black Samsung Cell Phone
> FP&F No. 2021565400001001 Item 002
> (**"Target Device# 1"**)
>
> Blue Samsung Cell Phone
> Seized as FP&F No. 2021565400001001 Item 003
> (**"Target Device# 2"**)

The ("Target Devices") as described in Attachment A-1, and A-2, and to seize evidence of crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrants relate to the investigation and prosecution of Dario Josue RIVERA, for transportation of illegal aliens and aiding and abetting within the United States. The **Target Devices** were seized from RIVERA at the time of his arrest, and have been securely stored since seizure, and are currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement

1

personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

4. I have been employed by the USBP since 2007, and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for ten years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have

resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in

3

telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) cards) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b.     tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.     tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.     tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.     tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11.     On November 8, 2020, Omar VAZQUEZ was arrested by Border Patrol agents for alien smuggling on State Route 94 near Otay Lakes Road. Following his arrest, VAZQUEZ waived his *Miranda* rights and admitted he transported four aliens on that day. VAZQUEZ stated he lived in Orange, California. VAZQUEZ stated that several weeks prior a friend introduced him to a smuggler. VAZQUEZ admitted he was working smuggling aliens and that he had successfully smuggled aliens on two prior occasions.

5

VAZQUEZ stated that a female in a white Hyundai Elantra had assisted him previously as a scout driver. A review of DHS databases revealed that a white Hyundai Elantra bearing a California license plate number was observed traveling in-tandem with VAZQUEZ's vehicle near the Otay Lakes Road area in the past.

12. On November 24, 2020, at approximately 2:50 p.m., San Diego Sector Communications sent a broadcast via service radio to Border Patrol agents in the field to be on the lookout (BOLO) for two vehicles driving in tandem near Otay Lakes Road. This area is a heavily used route by alien smugglers. Given its proximity to the border, Otay Lakes Road presents an easy route for alien smugglers to quickly travel on to State Route 94 or into Eastlake and blend in with the general public. One of the two vehicles mentioned in the BOLO was the white Hyundai Elantra with the California license plate number described above. The other vehicle was a black Volkswagen Passat bearing a California license plate.

13. Subsequently, the Office of Air and Marine helicopter (Omaha) assisted with locating both vehicles. Omaha responded to the area and advised agents that they had located both the White Hyundai Elantra and the black Volkswagen Passat that were traveling in tandem, and began to monitor their direction of travel. Omaha advised agents that both vehicles were traveling west on State Route 94.

14. Agent C. Ochoa responded to the area and was able to locate the Elantra and Passat traveling west on SR-94 near Steele Canyon High School in Spring Valley, California. Agent Ochoa was able to position himself behind both vehicles in order to follow them. Agent Ochoa observed that the Passat was heavily laden in the rear as if there were at least a few people in it. Agent Ochoa also noticed that the windows had a very dark tint. Due to the Agent Ochoa's observations, he positioned himself behind the Passat and conducted a stop near Campo Road in La Mesa, California. The Passat

6

yielded approximately 5.2 miles west of the Otay Mesa Port Of Entry and 13.5 miles north of the United States/ Mexico International Boundary.

15. Agent Ochoa approached the Passat and identified himself as a Border Patrol agent to the driver, later identified as defendant Dario Josue RIVERA, and the front seat passenger. Agent Ochoa instructed RIVERA to roll all of the windows down and he observed two other individuals in the back seat. Agent Ochoa asked RIVERA who the other individuals in the Passat were, to which he claimed he did not know. Agent Ochoa conducted an immigration inspection on the individual in the front seat and the individuals in the back seat. All three individuals, later identified as material witnesses Juan Pablo ESPEJO-Oriza, Jose Manuel GALLARDO-Garcia, and Romulo VELASQUEZ-De Jesus, stated that they are citizens of Mexico without immigration documents allowing them to enter or remain in the United States legally. At approximately 3:05 PM, Agent Ochoa placed all individuals, including RIVERA, under arrest.

16. At approximately 3:10 pm, Omaha advised agents that he was monitoring the white Hyundai Elantra heading west on SR-94. At approximately 3:15 p.m., Agent Barron, parked next to SR-94, observed a white Hyundai Elantra park approximately 50 yards away on the north side of the westbound SR-94 lanes. Agent Barron observed a male exit the driver's door and switch seats with a female passenger (who then started driving). As the Hyundai passed, Agent Barron was able to confirm that the license plate was the same as the plate identified in the BOLO. Agent Barron then conducted a stop of the Elantra approximately one mile east of Federal Boulevard on SR-94 on San Diego, California. Agent Madueno arrived on scene directly after the stop. As Agent Madueno approached the Elantra, he recognized the front seat passenger, later identified as defendant Omar VASQUEZ, as being a smuggler in the smuggling event referenced

above on November 8, 2020. Based on these circumstances, at approximately 3:20 PM, Agent Madueno placed VASQUEZ under arrest for alien smuggling.

17. At approximately 7:58 PM, Omar VASQUEZ was served his *Miranda* rights and agreed to give a statement. VASQUEZ admitted that on November 24, 2020, he was going to be paid to help with the transport of the aliens in the United States. VASQUEZ stated he knows RIVERA from school and that they planned to smuggle the aliens together. VASQUEZ admitted he was acting as a scout in this event.

18. A Black Samsung Cell Phone and a Blue Samsung Cell Phone **(Target Devices)** were found in the center console of the vehicle that RIVERA was driving at the time of the arrest. RIVERA claimed ownership of both phones and they were subsequently seized.

19. Material Witnesses, Juan Pablo ESPEJO Oriza, Jose Manuel GALLARDO-Garcia and Romulo Bernardo VELASQUEZ Dejesus stated that they made arrangements to be smuggled into the United States. Both GALLARDO and VELASQUEZ stated that they agreed to pay between $7,000-$8,000 US dollars to be smuggled into the United States illegally. ESPEJO stated he did not know how much he would pay. ESPEJO, GALLARDO and VELASQUEZ were shown a six pack photographic lineup and were unable to identify anyone in this event.

20. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendant was using the **Target Devices** to communicate with others to further illegal entry into the United States. Based on my training and experience, it is also not unusual for individuals, such as

the Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on October 24, 2020, through November 24, 2020.

## METHODOLOGY

21. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephones and subject them to analysis. All forensic analysis of the data contained within the telephones and memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days from the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

24. Law enforcement has previously attempted to obtain the evidence sought by this warrant through the owners' consent. Consent was not given.

## CONCLUSION

25. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of RIVERA's alien smuggling in violation of Title 8, United States Code, Sections 1324.

26. Because the **Target Devices** were seized at the time of RIVERA's arrest, and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Devices**. As stated above, I believe that the appropriate date range for this search is from **October 24, 2020, through November 24, 2020**.

27. Accordingly, I request that the Court issue warrants authorizing law enforcement to search the item described in Attachments A-1 and A-2, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Wesley Cornue
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 27th day of November, 2020.

_____
HON. BARBARA L. MAJOR
United States Magistrate Judge

11

# ATTACHMENT A-2

## PROPERTY TO BE SEARCHED

The following property is to be searched:

Blue Samsung Cell Phone
FP&F No. 2021565400001001 Item 003
**("Target Device# 2")**

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

## **ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrants.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of October 24, 2020 to November 24, 2020:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.